Boynton, J.
The parcel of land, the title to which is the subject of the present controversy, was appropriated in 1836 for caual purposes, under the act of February 24, 1825. 2 Chase’s Stat. 1472, § 8. "When the case was before the supreme court commission, it did not appear that the city of Toledo had parted with its title, or contemplated to devote the property to private uses. The question, therefore, which is now presented, was not decided. The state, by its canal commissioners, having appropriated the land for canal purposes, under the act of the above date, it was held competent for the legislature to devote the same to the uses of a public highway, without working a reversion in favor of the original owner of the soil. 28 Ohio St. 643.
The question now presented has exclusive reference to the extent of interest, or quantity and duration of the estate, acquired by virtue of the act of appropriation. It is contended by the plaintiff that the interest acquired consisted only of an easement, or, at most, of a fee limited, in its duration to a use of the land for the purposes for which it was appropriated, or for purposes of a similar nature; and that when such use was discontinued or abandoned, the estate was determined and the land reverted.
This position is founded, in argument, on two proposi *545 tions — first, that the legislature possessed no power, under the constitution of 1802, to appropriate an absolute fee in lands for canal purposes; and, secondly, if the power existed, that no such estate or interest was in fact authorized t j be taken by the act under which the appropriation was made. Both of these propositions are denied by the defendants.
We think there is little doubt that the power of eminent domain, vested in the legislature by the constitution of 1802, was fully adequate to reach and subordinate to the public use an estate in fee simple in lands and tenements, in all cases where the public necessities required it. The power is a legislative one, and was included in the general grant of legislative authority which that constitution vested in the general assembly. The only restriction or limitation upon 'its exercise was found in the fourth section of the bill of rights, which declared that “private property ought and shall ever be held inviolate, but always subservient to the public welfare, provided a compensation in money be made to the owner.”
The only conditions that were requisite to the exercise of the power were the needs of the public and compensation to the owner; and, when these conditions existed, the right of the state to withdraw the property from the control of the owner, and to subject to the public use,whatever interest or estate was necessary to subserve the purposes for which the same was taken, was complete and perfect. Giesy v. C., W. & Z. R. R. Co., 4 Ohio St. 308.
A glance at the decided cases will show this principle to be firmly established.
In Dingley v. The City of Boston, 100 Mass. 544, the construction of a statute was involved which authorized the appropriation of lands by the city to enable it to abate a public nuisance by raising the grade sufficiently to secure proper drainage. It was held, in view of the terms of the statute, that the fee vested in the city as absolute owner.
In Heyward v. The Mayor of New York, 3 Seld. 314, land *546 had been acquired by proceedings, in invitwm, for the purpose of an almshouse extension, under a statute authorizing the appropriation of a fee. After years of occupancy, it was determined to change the location of the almshouse to another quarter, and the ground so condemned was laid out into lots by the city, and sold at public auction. It •was contended that the legislature had not the power to take the fee, free from a resulting right in the original owner to re-enter when the use for which it was taken was abandoned, or ceased to exist. It was, however, held, that the statute vested a fee in the public, and that no reversionary estate remained in the original owner. In Rexford v. Knight, 1 Neman, 308, the absolute fee in the land taken for the Erie canal was held to vest in the people. In Haldeman v. The Pennsylvania Central R. R. Co., 50 Penn. St. 425, it was held that the state, having acquired a fee simple in lauds taken for the use of the public works, a cessation of that use would not revest the title in the former owner.
To the same effect are : United States v. Harris, 1 Sumner, 21; Chase v. Sutton Manufacturing Co., 4 Cush. 152; Coster v. The N. J. R. R. Co., 3 Zab. 227; Plitt v. Cox, 43 Penn. St. 486.
It is equally well settled, that it is for the legislature to determine the estate or extent of the interest which the public necessities require; whether an estate for years, for life, a mere easement, or a fee absolute or conditional. "Where the property is confessedly unnecessary for the purpose for which it was taken, or is for a mere private use, no doubt the courts may interfere. In the Matter of Albany Street, 11 Wend. 156; Embury v. Conner, 3 Comst. 511. But, as respects the necessity and propriety of the appropriation, and the duration of the estate to be acquired, legislative determination is final and conclusive. Cooley’s Lims. § 558.
It remains to be considered whether said act authorized the taking of the whole interest in the property, or limited the estate or interest to be acquired to a mere easement or conditional fee. The eighth section of the act conferred *547 -the power upon the state, through its authorized agents, to ■“enter upon and use, all and singular, any lauds, waters, streams, and materials necessary for the prosecution of the improvements intended by the act,” and provided, “ in case ■any lands, waters, streams, or materials taken and appropriated for the purposes aforesaid, shall not be given or granted to the state,” that, on the application of the owner, a just and equitable estimate and appraisal of the loss or damage, if any, over and above the benefit and advantage .accruing to the parties interested in the premises, should be made. It further declared, that the “ canal commissioners shall pay the damages so to be assessed and appraised, and the ‘fee simple’ of the premises so appropriated shall be vested in the state: Provided, however, that all such appli■cations to the board of canal commissioners for compensation for any lands ... so appropriated shall be made within one year after such lands . . . shall have been taken possession of by said commissioners for the purposes aforesaid.” This section prescribes three modes of acquiring title — by gift, purchase, and by appropriation. It is very manifest, from the words of the act, that the estate acquired by appropriation was either an absolute fee in the property taken, or a fee on condition that the land continue to be used and occupied for the use of the canal, or for purposes of a similar nature. A mere easement would not have been described as a fee simple. Hence, the land, on its abandonment for public uses, if a conditional fee was taken, would revert to the original owner, or to his grantee •of the specific parcel, and not to the grantee of the adjoining lands. But, when the language of the statute is considered in connection with subsequent acts relating to the .same subject matter, and with the nature and character of the work contemplated, and the meagre means of transit then existing, or which the future promised, it is very apparent that the improvement was expected and designed to be of permanent duration ; and, consequently, that the term “fee simple,” employed to define the estate to be acquired by appropriation, was used in its strict legal sense, *548 importing an absolute estate of inheritance. That, the same interest or estate was intended where the lands were taken under the statute as where the title was acquired by donation, or purchase, would seem to be perfectly obvious; and. that the title acquired by grant from the owner embraced the fee divested of all conditions or limitations, is made-very clear. The fourth section provided, that for the purpose of carrying into effect the object contemplated by the act, a fund should be constituted, to be denominated a canal fund, to consist of such appropriations, grants, and donations as might be made for that purpose by the legislature of the state, and by individuals.
And by the second section of the act “ to provide for the increase of the canal fund by the purchase and sale of real estate,” passed February 7, 1826 (24 Ohio L. 58), the canal commissioners were authorized to sell all such lands and town lots as theretofore had been, or thereafter might be, given, granted, or ceded to the state for the benefit of the canal fund, other than those which were situated at points or places on or adjoining the line of the Ohio canals, where-the surplus water produced could be advantageously used for hydraulic purposes.
Construing these statutes together, being in pari materia, it is very apparent that the title acquired by the state to-lands donated and granted in pursuance of the provisions-of the act of 1825 was the absolute estate in fee. These acts evidently contemplated donations, grants, and cessions of lands for the purpose of insuring the construction of the-canal, which would not be needed for any purpose immediately connected with its operation. Hence provision was made for their sale. Appropriations for such purpose could not be made. But the canal fund was made up of all acquisitions for canal purposes; and if the fee simple was acquired in some of the lands constituting this fund, and a fee conditional or determinable in others, it would follow that the right of the state to a portion of such fund would be absolute, and to the other only conditional. This condition of ownership could not have been designed.
*549 The title to the land appropriated was of the same char•acter, in point of interest or estate, as that granted in perpetuity.
It is, however, said that if, upon a just construction of the statute, power to appropriate the entire interest in the property was conferred, no title could be acquired until ■compensation was paid; that the language declaring that the “ fee simple of the premises so appropriated shall vest in the state, implies the necessity of paying the damages sustained by the owner as one of the conditions necessary to divest him of his title. Were it not for the fact that the statute limited the time within which the application for compensation was to be made, there would be some force in this position.
It was held in New Tort, in giving construction to similar language in the statute of that state, that the meaning ■of the words “ so appropriated” could only be satisfied by making the compensation required, and that the fee simple would not vest until the money was paid. Brinkerhoff v. Wemple, 1 Wend. 470.
But this holding was had before the owner was limited to any period of time within which to make claim for dam.ages. Under a subsequent enactment that no claim for damages should be received, unless filed within one year, and declaring the property so appropriated should be the •property of the state, it was held that where no claim was made for damages, the title vested in the state as fully as when compensation was made. Rexford v. Knight, 1 Kern. 308.
If actual payment of compensation was required before title to the property appropriated could be acquired by the state, notwithstanding the limitation contained in the proviso, it would necessarily follow, in cases where no application was made, and consequently no damages assessed, that mo interest or estate of any kind would vest in the state. All that the owner need do in such case to defeat the acquisition of title by the state would be to withhold his application for damages. The result in such case would be *550 that the state would, be using land for public purposes to-which it had no title, and no means, without further legislation, of acquiring it. That no estimate or appraisal ^f the loss or damage was made when the lands in question were taken is attributable solely to the omission of the owner to make application therefor. He having had notice of the appropriation, and provision having been made by which compensation could be obtained, the title of the state-was as complete, after the expiration of one year from the-date of the taking, as if compensation had in fact been made. By omitting to apply for compensation, the right thereto was waived.
It is finally claimed, that because, in determining the compensation the owner was eutitled to receive for.the land taken, the benefits he derived from the improvement were to be considered, and from the further fact, that the benefits which were expected to arise from day to day from the use and operation of the canal, have ceased, the consideration upon which the right to further occupy the-premises has also ceased, and hence that the title to the land reverts to the original owner. This objection, as applied to the facts of the present case, only goes to the validity of the statute; as it appears, from the petition, that no claim for damages was made by the owner, and hence no question of benefits could have been considered. Non constat,. that the owner of the parcel of land in controversy was at all benefited by the canal improvement, or was the owner of any other property, in the vicinity of the canal, which-could be at all affected by its construction and operation; and, hence, if application had been made for compensation, he might have received the full value of the laud' in money. But the question is not an open one, that in measuring the compensation the owner of property taken under the constitution of 1802 for public use was entitled to receive, the benefits by him derived from the-improvement were the proper subject of consideration, in ascertaining the value of the land taken. Symonds v. Cincinnati, 14 Ohio, 147, 541; Kramer v. The C. & P. R. R., 5 *551 Ohio St. 140. Compensation in money was to be made for actual loss, and this was determined by deducting from the value of the land before the improvement, the value of what remained after the improvement was constructed, Id. 145. This point was fully determined in the cases last above cited. From the cases cited in argument from the States of New Fork, Indiana, and Pennsylvania, it will be seen that the construction there given to similar and analogous statutes, are in full accord with the conclusion. Fere reached.
The state having acquired the whole interest in the property in controversy by the act of appropriation, it folows that the title acquired by the city of Toledo embraced the whole estate.
Demurrers to the petition sustained, and petition dismissed.'