SWEET *et al.* v. RECHEL.

*(Circuit Court, D. Massachusetts. January 26, 1889.*

NUISANCE—ABATEMENT—COMPENSATION—POLICE POWER.

Act Mass. June 1, 1867, provides that for the purpose of abating a nuisance the city of Boston may purchase or otherwise take lands within a certain district, and that the title of all land so taken shall vest in the city; and that a party whose land is taken may agree with the city upon the damage done, and the amount thereof shall then be paid to him by the city. *Held,* that the title to lands taken under such act vests in the city, though no compensation has ever been made to the owner; the taking of the lands being under the police power of the state.

At Law.

*Thomas A. Jenckes* and *James E. Leach,* for plaintiffs.
*Geo. B. Bigelow* and *S. J. Elder,* for defendant.

COLT, J. This is a writ of entry, brought to determine the title to certain real estate situated in the city of Boston. The case was heard upon an agreed statement of facts. The defendant claims to derive title from Peleg Tallman, Jr., the father of the plaintiffs, under a guardian's deed executed in 1844, and he also claims title under a deed from the city of Boston, dated March 14, 1870. The plaintiffs contend that no title was conveyed by either of these instruments, and that the title to the property is in them as heirs at law of Peleg Tallman, Jr. As the defendant seems to rely more upon the deed from the city of Boston, let us first consider the grounds upon which its validity is attacked. On June 1, 1867, the legislature of Massachusetts passed an act entitled "An act to enable the city of Boston to abate a nuisance existing therein, and for the preservation of the public health in said city." This act provided that the city might purchase or otherwise take the lands and buildings within a certain district known as the "Church-Street District," and that the title of all land so taken should vest in the city of Boston. It further provided that a

party whose land was taken might agree with the city upon the damage done, and that he should then be paid the amount by the city. It further provided that any person entitled to any estate in the land so taken might within one year bring a bill in equity, setting forth the claims for damages against the city of Boston, or the Boston Water-Power Company, or any other corporation or person, by reason of any wrongful act or omission in causing dimunition in the value of the land at the time of said taking, and praying an assessment of damages against such parties. The land in controversy was taken under this act, and subsequently, on March 14, 1870, the city, for a valuable consideration, deeded the land to the defendant. The main contention of the plaintiffs is that no title to the land passed under this act. They do not deny the constitutionality of the act, because that question has already been settled by the supreme court of the state in *Dingley* v. *City of Boston*, 100 Mass. 544, but they say no title to the property passed until compensation was given, and that, as nothing was ever paid by the city to the real owners, the city never acquired any title, and that consequently nothing was conveyed by the deed of the city to the defendant.

In determining the question now raised it must be borne in mind that the object of this act was the abatement of a nuisance. The land was not taken under the right of eminent domain, but under the police power of the state. This case, therefore, is not parallel to that of *Kennedy* v. *Indianapolis*, 103 U. S. 599, upon which the plaintiffs largely rely. In *Bancroft* v. *City of Cambridge*, 126 Mass. 438, the court, in the construction of a similar act for the abatement of nuisance, use the following language:

"It was not passed to delegate the right of eminent domain, but under the police power of the commonwealth. Laws passed in the legitimate exercise of this power are not obnoxious to constitutional provisions, merely because they do not provide compensation to the individual who is inconvenienced by them. He is presumed to be rewarded by the common benefits secured. Instances of its exercise are found in all quarantine and health regulations, and in all laws for the abatement of existing and prevention of threatened nuisances. It has been many times recognized and applied in the decisions of this court."

But, as already stated, this act has been construed by the supreme judicial court of Massachusetts in *Dingley* v. *City of Boston*, and the court there held, not only that the act was constitutional, but that land taken under the act vested the fee in the city as absolute owners. To be sure, in that case the question of compensation was not directly raised or passed upon, but it logically follows from the conclusions of the court in that case that the plaintiffs have no right to maintain this action. If the act was constitutional, and a fee vested in the city under its provisions, then clearly by that decision no remedy was left to the owners except the assessment of damages as provided in the act. The construction of a state statute by the highest court of the state is conclusive upon the federal courts. For these reasons I am of opinion that the city of Boston derived title to the lands in controversy under the act of 1867, and that by the deed from the city the defendant subsequently became the owner of

the property. The conclusion here reached renders it unnecessary to enter upon any inquiry as to the validity of the guardian's deed. **Judgment should be entered for the defendant, and it is so ordered.**