CITY OF BOSTON *vs.* GEORGE N. TALBOT.

Suffolk.    March 18, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Constitutional Law,* Eminent domain.    *Boston Transit Commission.    Summary Process.    Evidence,* Extrinsic affecting writings.

Whether the purpose for which land is authorized to be taken under the right of eminent domain is a public use is a judicial question, and its determination by the Legislature is subject to revision by this court; but, where the use for which the taking is authorized is a public one, the question whether the taking of a particular parcel of real estate is necessary or expedient is a legislative question, upon which the decision of the Legislature as a tribunal of fact is conclusive, and in deciding it the Legislature may determine what kind of an estate it is necessary to take to accomplish the public purpose for which the taking is made, and may authorize the taking of a fee in the public interest, even where the use of the fee will not be needed permanently, and in such a case may authorize a subsequent sale or leasing of any rights in the property that no longer are required for the public use.

The right of the Legislature, to determine what land or rights or easements in land it is necessary or expedient to take for use in the construction or maintenance of a tunnel and its appointments under a street of a city for the promotion of the rapid transit of passengers, they can delegate to a commission representing the public interest in that particular.

Section 7 of St. 1902, c. 534, authorizing the construction of additional tunnels and subways in Boston, providing that the Boston transit commission " may sell or remove the buildings from any and all lands taken by it, and shall sell, if a sale be practicable, or if not shall lease, any lands, or rights or interests in land or other property so taken, or purchased for the purposes of this act, whenever the same shall in the opinion of the commission cease to be needed for such purposes," is constitutional, and that commission, in taking real estate in fee under § 6 of the same chapter and paying for it, and, when the construction of the tunnel is completed, disposing, under the power given in § 7, of such part of the property taken as is no longer needed, are exercising legislative authority properly delegated to them, and their decision in determining in good faith what property it is expedient to take to accomplish the public purpose is not subject to revision.

In an action, where the effect and validity of a taking of real estate by the Boston transit commission under St. 1902, c. 534, for use in the construction and main-

tenance of a tunnel beneath Washington Street in Boston are in question, evidence offered to show "the sense of the commission" or the belief or the conclusion of the commissioners is incompetent, and so is all evidence which attempts to show the views and opinions of the individual members of the commission, the taking by the commission being done by an instrument in writing filed in the registry of deeds, which by reason of delegated authority stands in the place of a legislative act and is to be interpreted like a statute.

The Boston transit commission, in taking a parcel of land and the building upon it under St. 1902, c. 534, for use in the construction and maintenance of a tunnel beneath Washington Street in Boston, where the original plan of the engineer of the commission contemplated a taking of only the part of the real estate which afterwards was used for the tunnel and a station, consisting of a basement underneath the greater part of the building, lawfully may take the fee of the whole property, if such a taking seems to the commission reasonably necessary for the proper and economical accomplishment of the work.

In an action, where the effect and validity of a taking of real estate by the Boston transit commission under St. 1902, c. 534, for use in the construction and maintenance of a tunnel beneath Washington Street in Boston are in question, evidence tending to show that the commission were mistaken in their judgment as to what real estate it was necessary or proper to take is incompetent.

An action of summary process for the possession of land or tenements under R. L. c. 181 is the proper remedy for the city of Boston to recover from the lessee of the previous owner real estate which has been taken by the Boston transit commission under St. 1902, c. 534, for use in the construction and maintenance of a tunnel beneath Washington Street in Boston, where the lease of the defendant has been terminated either by the taking under the right of eminent domain or by a notice given by the lessor under a provision of the lease permitting such a termination in case the premises or any part thereof should be taken for a street or other public use. Whether the defendant in such an action properly can raise the questions of the validity of the taking and the constitutionality of the statute under which it was made, here was not considered, because the taking was held to be valid and the statute to be constitutional.

SUMMARY PROCESS, under R. L. c. 181, by the city of Boston to recover possession of the street floor and upper stories of a building at the corner of Washington Street and Summer Street in Boston, alleged to have been acquired by the plaintiff by a valid taking by the Boston transit commission in connection with the construction of the tunnel under Washington Street and of a station for that tunnel under the corner mentioned. Writ in the Municipal Court of the City of Boston dated December 26, 1907.

On appeal to the Superior Court the case was tried before *Aiken*, C. J. The taking filed in the registry of deeds, which was offered in evidence by the plaintiff and was marked Exhibit 1, contained the following :

" The Boston transit commission deems that it is necessary for the purposes set forth in chapter 534 of the Acts of the Legislature of the Commonwealth of Massachusetts for the year 1902, being an act to provide for the construction of additional tunnels and subways in the city of Boston, and every other power and authority it hereto enabling, to take in fee for the city of Boston a parcel of land with the buildings thereon situated in Boston in the Commonwealth of Massachusetts and bounded and described as follows : " Here followed the description of the premises taken which included not only the premises in dispute, but also the underlying part of the same parcel of real estate which now is in use by the city of Boston as a station of the Washington Street tunnel and an entrance thereto and an exit therefrom.

There were offered in evidence by the plaintiff two leases from the executors and trustees of the Salisbury estate, the owners, to the defendant, marked respectively Exhibit 2 and Exhibit 3. The lease marked Exhibit 2 was dated December 15, 1902, and was for a term of five years and six months from January 1, 1903, to July 1, 1908. The lease marked Exhibit 3 was dated February 12, 1907, and was for a term of five years from the expiration of the term of lease marked Exhibit 2. These were admitted without formal proof of execution by agreement of the parties. The plaintiff also offered in evidence two notices as follows : A notice of a termination of the defendant's lease served upon the defendant by the executors, lessees, dated October 9, 1908, with the return of the deputy sheriff thereon, which notice was marked Exhibit 4, and a notice to quit to the defendant from the city of Boston by Thomas M. Babson, Esquire, corporation counsel, dated December 20, 1907, which, together with the constable's return of service thereon was marked Exhibit 5.

The defendant objected to the introduction of papers marked Exhibits 1, 4 and 5, on the ground that they did not tend to prove any fact that would entitle the plaintiff to maintain its action in its present form of ejectment. The Chief Justice overruled the defendant's objection and admitted the evidence, and the defendant excepted. It being admitted that the defendant was still in possession of the premises, the plaintiff rested.

Thereupon the defendant asked the judge to order a verdict for the defendant on the ground that the plaintiff had shown no title

in or right of possession to the premises in question, and that an action of ejectment or summary process would not lie for the recovery of premises under the facts shown by the plaintiff's proof where the validity of the alleged taking and the plaintiff's title to the premises were in controversy.

The Chief Justice refused to rule as requested, and the defendant excepted.

During the discussion, and before this ruling, the counsel for the plaintiff commented on the fact that no answer had been filed. Thereupon the defendant offered an answer for filing which, against the objection and exception of the plaintiff, the Chief Justice allowed to be filed as of the time of the opening of the trial. The defendant set up, among other matters, that the taking was illegal because it was not authorized by the statute and also because the statute was unconstitutional.

The defendant then offered in evidence a model of the building in question showing such parts of the building as had actually been used for tunnel or subway purposes and such parts as had been continuously in the possession of the defendant and as he contended had never been used for tunnel purposes.

The defendant also offered to prove certain facts which the Chief Justice ruled were inadmissible on the ground that the proceedings of the commission were conclusive upon the issues which the defendant sought to raise by the evidence offered. Accordingly the defendant made a formal offer of proof in the following terms:

" In the above entitled case the defendant offers proof of the following facts:

" Some months prior to the alleged taking, which occurred in September, 1907, the Boston transit commission having determined to locate a station of the Washington Street tunnel under the premises in question, caused their engineer to prepare plans for such a station with an entrance thereto and an exit therefrom on Washington Street and Summer Street. These plans contemplated and involved a taking of a portion of the premises only substantially such as is now in use at that station and as shown upon the model offered in evidence — to wit, a small part of the first floor and a larger part of the basement, leaving a part of the basement, nearly all of the first floor (the spaces occupied

for entrance and exit as shown on the model being reserved) and the three upper floors, unappropriated for any use in connection with the subway.

" The commission considered and discussed for some time whether they would take only the part of the property above described and now in use for subway purposes, or take the whole estate and thereafter sell that part which was not required and which they did not intend to use for subway or tunnel purposes. It was the sense of the commission that considering the small proportion of the property which was required for tunnel purposes, it would probably be better to take only the part actually required for such tunnel purposes. The commission investigated the relative cost of taking only that part of the estate needed for the use of the subway station or tunnel purposes, as compared with taking the entire property and subsequently selling the part which they did not intend so to use. They reached the conclusion that the location of the station with its entrance and exit in the property would make that portion of the estate which they did not intend to use for tunnel purposes much more valuable, so that if taken by the city it could be sold at a price which would make the cost of acquiring what they wanted to use much less than the cost would be if they took only what they needed and expected to use for subway purposes; that they would thereby acquire for the city the value of the benefit to the rest of the estate which would accrue from the taking and use of the parts which they proposed actually to use for station purposes.

" Thereupon the commission decided to take the whole estate really believing that only a ' small proportion ' was ' required for tunnel purposes ' and proposing and intending to use for the purposes described in the act only that ' small proportion ' which they did in fact so use. The commission included in their alleged taking that part of the estate which they did not intend to use for tunnel purposes for the sole purpose and with the sole intent of selling such part as soon as a favorable opportunity arose.

" Accordingly, the commission took that part of the estate which is now in suit under the guise of eminent domain but for the purpose of selling the same thereafter, and their taking was in excess of the needs of any purposes described in the act.

" No claim is made or suggested that the commission or any

members thereof acted otherwise than in what they believed to be and what actually would have been for the financial advantage of the city, or that they acted in bad faith in any sense of personal gain or advantage; yet they did not in good faith believe or decide that any more of the estate was actually needed for the purposes of the act than was actually so put into use and as is shown in said model in evidence and heretofore described.

"Within less than a week after the alleged taking, the property in suit, that is the part taken not for tunnel or station uses, was placed in the hands of brokers either to negotiate a lease of the same for a term of years or to secure a purchaser thereof. It was contemplated that the proposed lease should go into effect at once, and that the lessee should continue in occupation of the premises in suit continuously throughout the time that the work of subway construction was progressing.

"Before and while the subway was being built various offers were made for the purchase of this property, were considered by the commission, and rejected solely because the price was considered inadequate. The said brokers applied to this defendant to become a lessee for a period of five months from October 1, 1907, during the construction of the subway, the premises to be practically the same (with the exception of parts of the basement) as those in suit. The defendant was also invited to become a purchaser of the same premises. The premises in suit from the date of the alleged taking have been for sale to any purchaser who would give a price considered by the commission as adequate, and they were taken solely in contemplation of such sale and for the purpose thereof.

"From the date of the alleged taking the defendant has occupied the said premises exclusively for the conduct of his business as a dealer in men's furnishing goods. No part of them have ever been used for subway or tunnel purposes."

The Chief Justice ruled that the evidence offered was immaterial and inadmissible, not upon grounds of informality in the form of the offer or upon any ground peculiar to the form of action, but broadly on the ground that the action of the transit commission was conclusive upon the defendant, and that the facts which he offered to show would therefore be inadmissible in any form of action for trying the title to the premises. He

ruled that the statute under which the transit commission acted was constitutional; that it authorized the taking of the whole of the estate in fee, and that, the commission having voted that it was necessary to take the entire estate for public use, its action was conclusive and final. The defendant excepted to all of these rulings.

The Chief Justice thereupon ordered the jury to return a verdict for the plaintiff, and at the request of both parties reported the case for determination by this court. If his ruling that this proceeding for ejectment could be maintained for the possession of the premises in question was wrong, judgment was to be entered for the defendant. If, however, this action could be maintained by the plaintiff upon the evidence offered by it, and the whole or any part of the evidence offered by the defendant in his offer of proof was admissible, the case was to be remanded to the Superior Court.

*T. M. Babson*, for the plaintiff.

*S. L. Whipple*, for the defendant.

KNOWLTON, C. J. This is an action brought under the R. L. c. 181, to recover possession of real estate at the corner of Washington and Summer Streets in Boston. This property was taken by the Boston transit commission on September 12, 1907, under the St. 1902, c. 534, for the purposes set forth in the act, which is entitled " An Act to provide for the construction of additional tunnels and subways in the city of Boston." The principal question raised by the report is whether the taking was valid.

The form of the taking is in perfect compliance with the terms of the statute. It is contended by the defendant that the act is unconstitutional. In § 6 it authorizes the taking of lands in fee, and of " easements, estates, and rights in land, including the right to go under the surface thereof or through or under buildings or parts of buildings thereon," etc. The taking " may be confined to a portion or section of such parcel fixed by horizontal planes of division below or above or at the surface of the soil, and in such case no taking need be made of upper or lower portions or sections, except of such easements therein, if any, as the commission may deem necessary." In § 7 authority is given to sell or remove the buildings from any and all lands

taken, and to sell if a sale be practicable, and if not to lease any lands or rights or interests in land or other property so taken, whenever the same shall, in the opinion of the commission, cease to be needed for such purposes.

The construction of tunnels and stations under ground, with the approaches thereto and all the necessary appointments thereof, called for uses of land in certain places, which involved many complications in reference to the effect upon land adjacent to that which would be occupied permanently by the tunnel and stations and approaches thereto, and upon buildings or horizontal planes of land above the portions permanently occupied. Risks of injury to buildings or foundations of buildings not within the limits of the tunnels or stations to be constructed would be involved in some places. Of course there would be a liability for damages, under § 8 of the statute, wherever property was taken or injured by the commission, under the authority of the act. If the construction of the tunnel, or of a station of the tunnel, would necessarily have a directly injurious effect upon land outside of the limits of the tunnel, so as to subject the city to a substantial claim for damages on that account, it might be reasonable and proper for the commission to take the land in fee and pay for it, and then, when the work was ended, to dispose of that part which was no longer needed.

The Legislature well might provide for a taking of land and a construction of the work with a reasonable regard to economy, and a taking in fee of adjacent land likely to be seriously injured in the progress of the work might be more economical than a taking only of that which would be needed permanently. The uncertainties as to the extent of injuries to the adjacent land from construction might cause serious embarrassment in the assessment of damages, and sometimes lead to large awards, founded on risks that might prove to be much less than was at first supposed.

The question whether the use for which land is taken under the right of eminent domain is a public use is a judicial question, and the determination of the Legislature upon it may be revised by the court. *Talbot* v. *Hudson,* 16 Gray, 417. *Moore* v. *Sanford,* 151 Mass. 285, 288. *Lowell* v. *Boston,* 111 Mass. 454. *Opinion of the Justices,* 204 Mass. 607, 616. But if the

use for which the taking is made is public, the question whether the taking of a particular piece of real estate is necessary or expedient is a legislative question, upon which the decision of the Legislature, as a tribunal of fact, is conclusive.    *Talbot* v. *Hudson,* 16 Gray, 417, 424.    *Dingley* v. *Boston,* 100 Mass. 544, 560. *Lynch* v. *Forbes,* 161 Mass. 302.    *Burnett* v. *Boston,* 173 Mass. 173, 176.    *Moore* v. *Sanford,* 151 Mass. 285, 288.    *Shoemaker* v. *United States,* 147 U. S. 282, 298. ˙*United States* v. *Gettysburg Electric Railway,* 160 U. S. 668, 685.    *Challiss* v. *Atchison, Topeka & Santa Fe Railroad,* 16 Kans. 117, 127.    This doctrine covers the principle that the Legislature may determine what kind of an estate it is necessary to take to accomplish the public purpose for which the taking is made, and may take a fee, even though the use of the fee may not be permanent.    *Sweet* v. *Buffalo, New York & Philadelphia Railway,* 79 N. Y. 293. *Water Works Co. of Indianapolis* v. *Burkhart,* 41 Ind. 364.    *Dingley* v. *Boston, ubi supra.    Burnett* v. *Boston, ubi supra.*    The Legislature well might determine that a taking in fee might be necessary in certain cases, in reference to a reasonably economical management of the business, in the public interest, even though the use of the fee would not be needed permanently, and might authorize a subsequent sale or leasing of any rights in the property that were no longer devoted to the public use. We see no reason for doubting the constitutionality of the act.

The right of the Legislature to determine what land, or rights, or easements, in land, it was necessary or expedient to take for use in the construction or maintenance of a tunnel and its appointments, it could delegate to a tribunal representing the public interest in that particular.    The act of the Boston transit commission, in the form of a taking in writing, duly recorded, in conformity with the statute, is to be treated as if it were a statute.    Its exercise of delegated legislative authority and its final judgment in determining what property it was expedient to take to accomplish the strictly public purpose for which the taking was made are not subject to revision.    Of course, if the instrument of taking, considered in all its parts, and applied to the property described in it, showed that the property was not taken for the purposes set forth in the statute, and that the portion of the writing averring such a taking was controlled by other parts

of it which showed those words to be used erroneously, or to be a mere pretense, the taking would be set aside as not for a public use.   But there is nothing on the face of this writing that indicates the possibility of such a construction.

We come now to the defendant's offer of proof.   It is to be remembered that this is an offer of evidence to control the construction of a writing which stands in the place of a legislative act.   It is not competent to inquire into the individual opinion or motive of any member of the Boston transit commission. Said Mr. Justice Field in giving the opinion of the court in *Soon Hing* v. *Crowley*, 113 U. S. 703, 710 : " The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferrible from their operation, considered with reference to the condition of the country and existing legislation. . . . The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile." In *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290, 318, it is said that " there is, too, a general acquiescence in the doctrine that debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body."   See also *Browne* v. *Turner,* 174 Mass. 150, 159.   While facts that appear in connection with the proceedings in the enactment of statutes may sometimes be shown for the purpose of illustrating the subject to which the statute applies, the expression of individual opinions, in debates or otherwise, is never competent.   Under this principle, most of what was offered was incompetent.   " The sense of the commission," the belief of the commission, and the " conclusion " of the commission in reference to the taking, are to be determined from their final act of taking.   The offers, in these particulars, seem to be attempts to show the views and opinions of individual members of the commission, which could not be put in evidence.   Other parts of the offer seem to rest upon the erroneous assumption that the commission could not take land, except that which would be needed for permanent use as a part of the tunnel or station, and especially that it could not consider what

would be an economical manner of taking land and doing the work, in reference to the probable damages from the process of construction, and the risks of injury to portions of the premises that would not be needed permanently.

If the original plan of the engineer contemplated a taking only of the part now in use, which includes a basement underneath the greater part of the building, that did not prevent a taking of the fee, if such a taking afterwards seemed to the commission reasonably necessary for the proper and economical accomplishment of the work. It was right for the commission to consider the cost of acquiring that which would be needed permanently, and it was right to take the building above the part which would be occupied permanently, if, in reference to the probable damages that would be awarded for injury to the building and for interference with the use of it, this seemed reasonably necessary to an economical management of the business in their charge.

So far as the facts offered in evidence tended to show that the commission was mistaken in its judgment as to what it was necessary and proper to take, they were incompetent, for upon that question its judgment was conclusive. None of the facts, if proved, would have controlled the official declaration of the commission that the taking was for the purposes set forth in the statute. They were not inconsistent with it. There was no error of law in the exclusion of the evidence.

We have considered the case without reference to whether this is a proper form of proceeding in which to raise such questions as the defendant has sought to raise, as to which we express no opinion.

The defendant also contends that, if the taking was valid, the plaintiff cannot enforce its rights in this form of action. One of the conditions under which this summary process may be maintained, as stated in the R. L. c. 181, § 1, is when "the lessee of land or tenements or a person holding under him holds possession without right after the determination of a lease by its own limitation or by notice to quit or otherwise." In such a case "the person entitled to the land or tenements may recover possession thereof," under this section. This case comes exactly within the terms of the statute. If there is a termination of the

lease in any way, the lessee becomes subject to the process. A taking of the property in fee, under the right of eminent domain, may well be held to be a termination of the lease. *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co.* 176 Mass. 115. But besides this, there was, on the part of the lessors before this action was brought, a formal termination of the lease by notice, in accordance with an express provision for its termination by the lessors at their election, in case the premises or any part thereof should be taken for a street or other public use. The election of the lessors to terminate the lease, and their notice to the defendant accordingly, brought his tenancy to an end. *Goodyear Shoe Machinery Co.* v. *Boston Terminal Co., ubi supra.*

The plaintiff is "the person entitled to the land or tenements," within the language of the statute, and as such "may recover possession thereof." This ground of defense is not well taken.

*Judgment on the verdict.*