INHABITANTS OF WRENTHAM *vs.* INHABITANTS OF NORFOLK.

The award of commissioners appointed by the court under a statute empowering them to appoint commissioners to apportion disputed claims between towns, will be revised by the court to see that the commissioners have acted within their authority and upon the matters submitted to them.

A public common reserved by the original proprietors for public uses is not, and a school fund held generally for the support of schools is, corporate property within the meaning of St. 1870, *c.* 35, § 4, by which the town of Norfolk is entitled to receive from the town of Wrentham a proportion of the corporate property owned by the latter town.

PETITION to the Superior Court for the appointment of three commissioners to determine, the towns in interest being unable to agree, the proportion to be paid by the town of Norfolk of the debt of the town of Wrentham, and the proportion of the property of the town of Wrentham to be received by the town of Norfolk, under St. 1870, *c.* 35, § 4,* which statute incorporates the

---

　* SECTION 4. The towns of Wrentham, Franklin, Medway, Walpole and Norfolk shall retain the school-houses within their respective limits, and the town of Norfolk shall assume and pay its just and equitable proportions, according to its present assessed valuation, of any debt due or owing from the towns of Wrentham and Franklin, respectively, at the time of the passage of this act, and shall be entitled to receive from said towns, respectively, its just

town of Norfolk from certain territory formerly within the bound aries of the several towns of Wrentham, Franklin, Medway and Walpole. The court appointed commissioners as prayed for, who heard the parties and made a report to the court, the material por·tion of which was as follows :

"The town of Norfolk claims that it is entitled to a share in the ancient public common near the meeting-house in Wrentham Centre, so called, and also in and to certain school funds held by the town of Wrentham, and which it claims should be included in the corporate property to be divided under the provisions of the act. These claims are denied by the town of Wrentham, and upon these issues we heard the evidence and arguments.

"As to the ancient public common, we find the evidence to be as follows, viz. : At a general meeting of the proprietors of Wrentham, held March 2d, 1662–3, it was voted that 600 acres of land 'be laid out for house-lots,' and all 'highways, officers' lots, burial places, training grounds and all such other lands necessary to be reserved and used for all public uses within the [tract] of the town, shall be over and above the 600 acres before mentioned.' At a meeting of the proprietors, October 30, 1722, it was voted 'that all tracts as have been agreed on by the proprietors of this town to be prohibited and reserved for any public use or any use or uses as may hereafter be agreed upon by said proprietors, (always to be understood that the proprietors shall not subdivide said land to or amongst themselves according to

and equitable proportion, according to said assessed valuation, of all the corporate property then owned by said towns of Wrentham and Franklin, respectively, including therein the school-houses retained by said Wrentham, Franklin and Norfolk, respectively; and said town of Norfolk shall be held to refund to said towns of Wrentham and Franklin, respectively, its just proportion of the surplus revenue, whenever the same shall be called for according to law; such proportion to be determined by the decennial state valuation next preceding such call. And in case the proportions aforesaid cannot be agreed upon by said towns of Norfolk, Wrentham and Franklin, respectively, the same shall be determined by three commissioners, to be appointed by the Superior Court for said county of Norfolk, upon a petition of either or said towns.

each proprietor's right, nor sell them and subdivide the money amongst them,) shall be held and enjoyed according to the purport and intent of such respective grants and agreements, forever.'

" May 14, 1746.   At a meeting of the freeholders and other inhabitants in town meeting, it was voted ' to empower the selectmen to stake out the training ground for the military companies to train on.'   ' February 9, 1746–7, the selectmen of Wrentham met and bounded and staked out for a training ground, by estimation, one acre and a half, be the same more or less,' by definite bounds which are recited in the town records.   Also at the same time another parcel described as follows:  ' More, another piece or parcel of land containing half an acre by estimation, be the same more or less, being all the common land lying round the meeting-house, bounded on the highway leading from Richard Fisher's to the Widow Daye's, westward, and on the way leading from said Fisher's to John Guild's, southeastward, and on the way leading from said Guild's to the Widow Daye's, northward.'   The following record also appears in the Proprietors' Book, and was produced in evidence:  ' February 9, 1746–7. The training ground laid or staked out pursuant to a vote of this town May 14, 1746.   See Wrentham Town Book of Records.'

" The commissioners do therefore determine that the town of Norfolk is not entitled to any share in said common, as corporate property, within the meaning of St. 1870, c. 35, § 4, or to receive the value thereof in the division of the corporate property of the town of Wrentham."

" It appeared in evidence that the school funds of Wrentham, at the date of the incorporation of the town of Norfolk, were invested as follows: a promissory note for $901.66, dated October 1, 1865, and eleven shares of the National Bank of Wrentham, valued at same date at $935, making the whole amount of said funds, exclusive of interest, $1836.66.   The original school funds were derived from three different sources.

" 1.  ' At a general meeting of the proprietors and inhabitants, [9. 4. 1685,] the question being put to the proprietors whether they should set out four or six acres of their now common land,

in the most convenient place near the meeting-house, with twenty or five-and-twenty acres of other upland, and swamp or swampy land for the accommodating and encouragement of a school, and is always to be understood that the use and benefit is for the school, and the right and propriety thereof is to remain the town's forever, and not to be alienated to any other use or purpose whatsoever. Voted in the affirmative.'

"February 26, 1734. At a meeting of the ' Proprietors of the common and undivided lands within the town of Wrentham : Voted, that there be, and hereby is, given, granted and confirmed to the inhabitants of this town forever, for the use and benefit of a school in this town, the income or use to be employed to and for the maintaining and keeping of a school in this town, and to no other end or uses whatsoever, a piece or parcel of land, commonly called the school land, being upland and meadow land, containing, by estimation, twenty-five acres, be the same more or less,' and describing the same by its boundaries.

" Upon a petition of a committee of the town of Wrentham, representing that two certain tracts of land given many years before for the use and benefit of a school in said town forever, and in consequence whereof the said town went into possession thereof, and have leased the same out for many a year ; but the situation of the lands are such that they will not rent for more than about one fifth part of the sum, annually, the interest of the money would amount to were they sold. The said town being desirous that the school may be as much advantaged by said donation as may be, are desirous to sell the same, and some doubt having arisen whether it be in the power of said town to dis, pose of the same and secure the principal sum they may sell for so that the ' said town may not be able to use the same,' an asking aid ' in disposing of said lands and securing the princi pal sum so that there may be an annual profit forever hereafte. arising therefrom to said town ;' the General Court, December 14, 1753, empowered and enabled the town to make sale of the school lands mentioned in the petition, ' for the most the same will fetch, and to make and execute a good and sufficient deed or deeds of the same,' prescribing the manner of the sale, an ? ' tha'

the money arising by the sale be well and sufficiently secured in the said town, and the principal always kept good, and the interest only to be applied towards the support of the school in said town, and that neither the principal or interest be applied to any other use.' At a town meeting held February 11, 1754, the town voted 'to accept the order of the General Court, of the 14th of December last, and to proceed according to the order in selling the school lands,' and thereupon chose a committee, with directions as to the manner of conducting the sale of each parcel described in the vote, as 'that parcel of school land at Stop River of about twenty-five acres,' and 'that parcel of school land near the meeting-house,' and also directing the manner of investing the proceeds.

"2. In 1685, the proprietors voted as follows : 'It is agreed by vote, that all the common land that lieth between the two grate ponds shall not be taken into any proprietie, but it shall lie as it is now bounded by lotts, and so remain in common to the proprietors forever.' At a meeting of the proprietors of the common and undivided lands within the township of Wrentham, 'legally warned and assembled, January 30, 1743–4, it was voted not to sell the land that lieth between the two great ponds,' but it was voted 'to give the same parcel of land to the town, to be disposed of as they shall think fit,' with this additional clause, viz : that if the West Precinct should be set off to be a township, that 'they shall have their part according to their common rights.'

"At a meeting of the freeholders and other inhabitants of Wrentham, November 27, 1759, it was voted 'to sell the land lying between the two great ponds, and whenever the Westerly Precinct shall be set off to be a township, district or any form whatever, distinct from this town, that they so set off shall have their part arising from such sale according as they were to have had as their proportion in said lands by a vote of the proprietors.' It was also voted that the committee be 'directed and empowered to lett out the money arising from the sale of said lands for such security as the school land sold for was lett, the principal sum to [be] kept good forever, and the interest arising therefrom be applied for the use of a school in this town for so long as the two precincts lie together as one town.'

" This land was sold May 20, 1761, and the proceeds of the sale were £158 15s. 8d. The West Precinct was incorporated as the town of Franklin in 1778, and these proceeds were then divided, and the share paid to the town of Franklin amounted to £34 14s. 10½d., leaving £123 0s. 9½d., or $410 federal currency, remaining in the hands of the town of Wrentham, which has ever since formed a part of the school fund, and the interest has been applied to the support of public schools in Wrentham.

"3. In 1827, Benjamin R. Cheever, a merchant of Philadelphia, died, leaving a will containing the following bequest : ' Also, I give and bequeath unto the town of Wrentham, in the State of Massachusetts, in aid of its school funds, the sum of one thousand dollars.' This legacy was paid over, and still forms a part of the school funds of the town of Wrentham.

" The commissioners find and determine, as to the school funds held by the town of Wrentham at the date of the incorporation of the town of Norfolk, that they cannot be considered as corporate property to be divided under the provisions of the act.

" Upon the whole evidence, therefore, the commissioners find and determine that the town of Wrentham is entitled to receive of the town of Norfolk the balance obtained by deducting the proportion of the corporate property of Wrentham, to which Norfolk is entitled, from the amount of the appraised value of the school-houses retained by Norfolk added to the proportion of the debt of Wrentham, for which Norfolk is liable, to wit, $1387.96, with interest from February 23, 1870, the date of the act incorporating the town of Norfolk."

In the Superior Court this report was accepted, and the respondents appealed.

*E. Ames*, (*S. Warner* with him,) for the petitioners.

*W. Colburn*, for the respondents.

COLT, J. The new town of Norfolk is in part taken from Wrentham. The act of incorporation provides that Norfolk shall pay its just and equitable proportion of any debt due from the town of Wrentham, and receive from that town its just and equitable proportion of all corporate property, including the school-houses retained by it. St. 1870, c. 35.

The towns failed to agree, and commissioners were appointed under the act by the Superior Court, to determine the proportion and make the division between them. Their report comes to this court for revision by appeal from the Superior Court.

The petitioners insist that the report of the commissioners is to be treated as an award of arbitrators, and that, as the rules of law adopted by them are not by the terms of the act under which they were appointed, or by the terms of the award itself, referred to the court for revision, their judgment is conclusive both as to law and fact, and cannot be impeached except for fraud, or for some mistake which in itself shows that the award does not express the real intention of the arbitrators. *Ellicott* v. *Coffin*, 106 Mass. 365. But all the powers of the commissioners are derived from judicial appointment, and the court will so far supervise their award as to see that they have acted within the scope of the authority with which they are invested, and that they have acted upon all matters submitted to them. *Boston & Worcester Railroad Co.* v. *Western Railroad Co.* 14 Gray, 253. *Hingham & Quincy Bridge Co.* v. *Norfolk*, 6 Allen, 353. *Metropolitan Railroad Co.* v. *Quincy Railroad Co.* 12 Allen, 262.

The duty of the commissioners was here limited to the appor tionment between these towns of corporate debts and corporate property. The question whether the property embraced in or excluded from their award is of this description affects only the subject matter of the submission, and is open to revision without any invasion of the rule on which the petitioners rely.

The respondents object to the action of the commissioners in refusing to charge the town of Wrentham with two descriptions of property as corporate property within the act, namely, the ancient public common or training field within the village of Wrentham, and certain funds held by that town for the support of schools. .

As to the first of these, the court are of opinion that the judgment of the commissioners is sustained by the facts reported. It is apparent from the vo+es of the original proprietors, and of the town, that the title to the training field or public common became vested in the town, not for its own use in a corporate capac-

ity, but for the use and benefit of those only who were or might become inhabitants, and who might have occasion to use it. *Green* v. *Putnam*, 8 Cush. 21. It was held for them in trust by the town. Liberal rules are adopted in the construction of ancient grants, in order to carry out the intention of the parties, not always plainly expressed. *Worcester* v. *Green*, 2 Pick. 425. *Montpelier* v. *East Montpelier*, 27 Vt. 704.

But the school funds held by Wrentham are differently situated in this respect. The income of the whole is applied to relieve the town from a burden imposed by general laws, and for which it is obliged to raise money by taxation. A portion was derived from the sale of land given to the town without limitation or restriction, and appropriated only by vote of the town long subsequent to the gift. We are referred to many acts for the division of towns from the earliest times down, from which it appears to have been the common practice to require the division of school lands and school funds in the apportionment of town property, showing that such land and funds have been regarded as corporate property, which alone the Legislature would have power in this way to decide. *Yarmouth* v. *North Yarmouth*, 34 Maine, 411. By the terms of this act, all the corporate property, including the school-houses retained by either town, is to be taken into account, and Norfolk is to receive its just and equitable proportion. We cannot interpret the act as showing an intention that the new town should lose by the division its just and equitable proportion of the school funds, to the direct advantage of the old town, while the interest of each in the school-houses is carefully taken into account. The school funds in question must be regarded under this act as corporate property within its meaning. *Report recommitted.*