INHABITANTS OF EASTON vs. WILLIAM E. DRAKE.

Bristol.    October 27, 1902. — November 25, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Grant*, Ancient.  *Common Lands.  Words*, "According to pitch."

The North Purchase, bought from the Plymouth Court in 1668, was set off from Taunton in 1710 and on June 12, 1711, was incorporated as the town of Norton. Before that incorporation, the proprietors of the Purchase in 1705 "voted and granted" that certain land named "shall ly as perpetuall common for a burying place, or training place, or some other publick use not exceeding six acres." In 1719, after the incorporation, there was recorded a lay out of the same six acres "according to pitch" "for some publick use," signed by persons recited to be "impowered to lay out land in Taunton North Purchase." Beginning with the year 1713 the tract had been used as the site of a meeting house and for a burial place. In 1725 the portion of Norton including it was incorporated as the town of Easton. In a real action for this tract of land, brought by one claiming under a lay out from the proprietors of the North Purchase made in 1876, against the town of Easton, it was *held*, that the lay out of 1719 in pursuance of the vote of 1705 put the title to the tract in the town of Norton and that upon the incorporation of the town of Easton it passed to that town. As ancient grants are construed liberally in order to carry out the intention of the parties, the words "for some publick use" in the lay out sufficiently indicate the town as the grantee, inasmuch as the town was using the meeting house and burying its dead in the land around it, and the words "according to pitch" mean according to a previous selection.

WRIT OF ENTRY, dated June 1, 1901.

In the Superior Court *Sherman*, J. found for the demandant; and the tenant alleged exceptions.

*F. S. Hall*, for the tenant.

*H. J. Fuller*, for the demandant.

BARKER, J.   The demanded land is a part of the North Purchase, which included the territory now comprised in the towns of Easton, Norton and Mansfield, and which was bought of the Plymouth Court on June 1, 1668, by fifty-three Taunton men. The purchase was set off from Taunton with the consent of that town and was made a separate town by an order of the General Assembly of the Province in March, 1710, and was fully incorporated as the town of Norton on June 12, 1711.  Prov. St. 1711–12, c. 4 ; 1 Prov. Laws, (State ed.) 676.   Before that in-

corporation the proprietors of the Purchase, on April 2, 1705, had "voted and granted that" certain land which included the demanded premises "shall ly as perpetuall common for a burying place, or training place, or some other publick use not exceeding six acres." After the incorporation, the same six acres were laid out "according to pitch . . . for some publick use" by persons who in the lay out state that they "are impowered to lay out land in Taunton North Purchase," and this lay out was recorded on March 17, 1719. The easterly half of the North Purchase was incorporated as the town of Easton, on December 21, 1725, and since has continued to be a distinct town, and the six acres are within its limits. A meeting house was erected on the six acres about the year 1713, and was the only meeting house then in Norton, and, after the incorporation of Easton, continued to be the only meeting house in Easton until the year 1750, when it was torn down, a new meeting house having been erected in another locality. The demanded premises are the most ancient burying ground in Easton, the earliest burial there having been in 1713, and burials in it continued from that time until about 1802. There was no evidence that, prior to 1880, either the town or any one else had taken any action or done anything for the purpose of taking care of the premises, and they had been suffered to grow up to woods and had been in this condition, prior to 1880, longer than any one at the time of the trial could remember. At the annual town meeting in 1880 a committee was appointed to consider the question of improving the old cemetery, and from the year 1881, the town has spent money upon and cleared up the premises.

The tenant claims title under a lay out to himself by the proprietors of Taunton North Purchase of common and undivided lands of the Purchase, dated January 12, 1876, and he put in evidence tending to show acts of ownership by himself since 1876.

The case was tried without a jury, and the judge, after finding that the tenant had acquired no rights by prescription or adverse possession, refused to rule that the demandant had failed to prove that it was seised of the premises, and refused to rule that upon all the facts and evidence the demandant was not

entitled to recover; and found for the demandant, and the tenant excepted. He also excepted to the admission in evidence of the proprietors' vote of 1705, and the lay out of 1719, and to evidence of the declarations of deceased persons and of tradition and reputation as to the location of the meeting house of 1713–1750, and also to evidence of the votes and acts of the demandant with reference to the premises in the year 1880, and since. The exceptions to the admission of evidence are not now pressed. All the evidence excepted to seems to us to have been competent and rightly admitted.

Although, when the vote of the proprietors was passed in 1705, there was no town to take, as grantee, the title to the six acres which the vote purported to grant for public purposes, the intention of the proprietors is clear that the premises were withdrawn from selection and purchase for individual ownership, and were devoted to public uses. Liberal rules are to be applied in the construction of such ancient grants, in order to carry out the intention of the parties. *Worcester* v. *Green*, 2 Pick. 425, 428. *Wrentham* v. *Norfolk*, 114 Mass. 555, 562. After the incorporation of Norton, the intention was actually carried out by the use of the premises as a burying ground and as the site of the meeting house. After that incorporation there was a body distinct from the proprietors of the Purchase, capable of taking as grantee, and the placing of the title in the town of Norton would fully carry out the intention of the proprietors declared in the vote of 1705. The lay out of 1719 is to be construed in the light of these circumstances, and so construed, under the rules governing ancient grants, it put the title in the town of Norton. *Wrentham* v. *Norfolk*, 114 Mass. 555, 561. The lay out is " for some publick use " which indicates sufficiently the town as the grantee, inasmuch as it was using the meeting house and burying its dead in the land around it, and the lay out is " according to pitch," which expression in this connection means according to a previous selection. The tenor of the lay out, with the evidence as to the use of the land, was enough to enable the judge to find that the vote of 1705 and the lay out of 1719 both related to the same land and both related to the demanded premises, and that the lay out put the title in the town of Norton. From that town it passed to

the demandant as public property upon the incorporation of Easton in 1725, and has so remained. The proprietors having parted with the title by the lay out of 1719, could give the tenant no title by the lay out of 1876.

*Exceptions overruled.*