## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

WINNISIMMET COMPANY *vs.* EDWARD L. GRUEBY & others.

Suffolk. March 8, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Eminent Domain. Winnisimmet Company.*

While it is a general rule that, where an interest in land is taken by right of emi-
nent domain for a purpose not inconsistent with a general right of property in
the owner, the interest taken is not a fee but only an easement, nevertheless
the question is always one of construction of the statute authorizing the taking,
and it is not necessary that the power to take and hold the land in fee should
be stated in any set terms, any language in the statute which makes that mean-
ing clear being sufficient.

Under all the circumstances attending their enactment, chapters 188 and 345 of
St. 1871, which authorized the Winnisimmet Company, a corporation organized
under a special charter, St. 1833, c. 197, for the purposes of maintaining a ferry
between Boston and Chelsea, to purchase or otherwise take for the purpose of
widening its ferry slip certain property described accurately in the statute "with
all the rights, privileges, appurtenances and easements to . . . said estate be-
longing," and provided that nothing therein contained should "give said ferry
company any right to enter upon, or deal with anything less than the whole
of the parcel of land" therein "described or intended," and also provided that the
act should be void unless the land should be purchased and paid for, or other-
wise taken and notice of such taking given in writing to the owner of the land
or his representatives within six months from its passage, gave that corporation
the right to take by eminent domain a fee in the whole land described with all
its easements and appurtenances.

PETITION, filed in the Land Court on November 2, 1909, for
the registration of the title to premises near the foot of Hanover
Street in Boston, extending from above high water mark to be-

low low water mark to the so called " Old Harbor Commissioners' line."

The petitioner's title was alleged to have been acquired by a taking by eminent domain under authority of St. 1871, cc. 188, 345. The respondents were the heirs at law of the owner of the premises at the time of the taking, and were then and at the time of the filing of the petition the owners of land adjoining the locus.

The case was heard in the Land Court by *Davis*, J. The facts are stated in the opinion. At the close of the evidence the respondents asked the trial judge to rule (1) that the petitioner acquired by virtue of its taking only an easement, and not an absolute fee simple; (2) that the petitioner could not maintain its petition ; and (3) that, if the petitioner could register any title in this case, it should be only to such rights to use and occupy the premises for the purpose of widening its ferry slip as it acquired under St. 1871, cc. 188, 345, and that such title should be registered with full recognition of the rights of the respondents as owners of the fee.

The judge refused to make any of the rulings thus requested, and made a decree for the petitioner. The respondents alleged exceptions.

*R. B. Stone*, for the respondents.

*J. R. Dunbar*, (*A. P. Teele* with him,) for the petitioner.

HAMMOND, J. The only question is whether by the taking under St. 1871, c. 188, as amended by St. 1871, c. 345, the petitioner acquired a fee in the locus.

The right to take private property for a public use is founded upon and limited by public necessity. Where the necessity stops there stops the right to take, both as to amount of land and the nature of the interest therein. Accordingly the general rule is that where land is taken for a purpose not inconsistent with a general right of property in the owner the right taken is not a fee, but only an easement. *Harback* v. *Boston*, 10 Cush. 295. *Rockport* v. *Webster*, 174 Mass. 385. *Newton* v. *Newton*, 188 Mass. 226, and cases cited therein. In the first case above cited Shaw, C. J., said (p. 297) : " When, therefore, the Legislature, being vested with the exercise of this high power, use language not precise and explicit, but open to construction, and if one

construction would convey the power beyond the limit necessary to meet the public exigency, and another construction would limit it by the extent of such exigency, we think the latter ought to be adopted, as the one intended by the Legislature."

But sometimes a fee is taken. *Dingley* v. *Boston*, 100 Mass. 544. *Page* v. *O'Toole*, 144 Mass. 303. And in the former of these two cases Chapman, C. J., uses the following language: "Whether land be taken under the clause [in the State Constitution] authorizing the making of wholesome and reasonable laws, or by virtue of the clause authorizing the appropriation of private property to public uses, it must in either case be left to the Legislature to decide what quantity of estate ought to be taken in order to accomplish its purpose, and do the most complete justice to all parties. In the taking of other property no one would doubt that an absolute title might be acquired. . . . In taking land for highways, the Legislature has not deemed it necessary to take more than an easement; but the easement is usually perpetual. . . . The Constitution provides for the protection of all private property, and it provides that, when the public exigencies require that the property of any individual shall be appropriated to public uses, he shall receive a reasonable compensation therefor. But it leaves the Legislature, without any restriction, express or implied, to decide in each case as it arises, what constitutes such exigency; and if land is to be taken, what estate in it shall pass." (p. 560.) The question is always one of the construction of the statute authorizing the taking (*Harback* v. *Boston, ubi supra*), and, as said by Holmes, J., in *Newton* v. *Perry*, 163 Mass. 319, 321, " there are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee. Any language in the statute which makes its meaning clear is sufficient."

In the light of the circumstances existing at the time of the enactment of the statute in question what is its true interpretation? The petitioner was incorporated under a special act (St. 1833, c. 197), by which it was empowered " to purchase and hold any ferry or ferry rights, between Boston and Chelsea, and to construct and maintain wharves, landing places, and other works suitable and convenient for the steamboats and other vessels which may be used on any such ferry, and for the accommo-

dation of foot passengers, horses, carriages and merchandise; provided, that nothing herein shall authorize said corporation to take private property for any of said purposes, otherwise than by legal authority from the owners thereof, nor to build any bridge or dam over the channel of any public navigable waters, or otherwise permanently to obstruct the same." It was further provided that said corporation might purchase and dispose of the whole or any part of the real estate held by certain trustees and described in a certain deed therein named, and " such other real estate at or near the landing places of any such ferry, not exceeding in value $75,000, as may be necessary or convenient for the purposes aforesaid, together with vessels and steam boats, and such other personal property, not exceeding in value $100,000, as may be necessary and convenient for the better management of any such ferry, and of the affairs of said corporation."

In October, 1833, the corporation purchased the ferry property and other real estate and took the title thereto in fee. The land and flats immediately adjoining the ferry property on the south including the locus were owned in 1837 by one Aspinwall. At that time the estates of the corporation and Aspinwall and of adjoining proprietors extended only to low water mark, but by St. 1837, c. 211 and c. 212, both the corporation and Aspinwall were granted rights to extend their respective wharves to the old commissioners' line. A controversy arose between Aspinwall's successors in title and the corporation claiming under these legislative grants as to the boundary line between these estates below low water mark. By a decision of this court rendered in 1865 (*Winnisimmet Co.* v. *Wyman*, 11 Allen, 432) the line was located further over upon the land of the corporation, thereby contracting its extent. In 1871 the corporation needing more land petitioned for authority to take some adjoining land for ferry purposes. The situation at that time is stated by the Land Court in the following language: " The Winnisimmet Company owned its adjoining ferry property in fee and was authorized by its charter to so hold it. It had trespassed on the land now in question by maintenance of piles for one wing of its ferry slip in such a manner as to interfere with the legitimate use of the whole of the present locus. After extended litigation it had been ejected therefrom. It had then failed to obtain any portion of the

present property by agreement with the owner." It had no way of getting the property except by legislative grant, and this it did not have. It never had been authorized to take property by right of eminent domain, even although the use it desired to make of it was a public use. The land was substantially the northerly half of a long, narrow strip reaching from Commercial Street northerly to the commissioners' line, and was about three hundred and twenty feet long and about forty-eight feet wide at one end and sixty-six feet at the other, a part being above low water mark and a part below, with the rights and easements granted by St. 1837, c. 211. The ferry was upon one side of it and Constitution Wharf, in which the owner of this land is not shown to have had any interest, was upon the other. Such was the situation, and such were the circumstances leading to it, at the time of the passage of St. 1871, c. 188.

The statute was passed upon the petition of the corporation for authority " to take land adjoining its present ferry slip in the city of Boston for the purpose of widening said ferry slip." The first section authorizes the corporation " to widen their ferry slip . . . in the city of Boston." The second section provides that the corporation " may purchase, or otherwise take, for the purpose of such widening" the locus, accurately describing it, " with all the rights, privileges, appurtenances and easements to . . . said estate belonging." It further provides that if the corporation shall not be able to obtain such land by an agreement with the owner thereof " they shall pay therefor such damages as shall be" assessed in legal proceedings to be instituted for that purpose. Then follows the third section : " Nothing herein contained shall give said ferry company any right to enter upon, or deal with anything less than the whole of the parcel of land herein described or intended ; and this act shall be void unless said land shall be purchased and paid for, or otherwise taken, and notice of such taking given in writing, to said Grueby or his representatives within six months from its passage."

It is to be noted that we are not dealing with a statute which is laying down the rules under which every ferry corporation shall take property at any time thereafter. The whole case is before the Legislature. The land to be taken is specifically described, and it is to be taken with all the rights, privileges, appurtenances

and easements thereto belonging.   And the corporation can take nothing less than the whole of the parcel of land.   It must take the whole if anything, and it must purchase and pay for the land or take it within six months.

The conviction forced upon a person reading this statute in the light of the situation is that it is dealing with one special piece of property under peculiar circumstances; that the Legislature was of the opinion that the ferry should be widened as prayed for by the corporation ; that to do complete justice to both parties all the land with its easements and appurtenances should pass from the owner to the corporation, and that if the corporation could not purchase the property, it might take it, and that whether the corporation took by purchase or by right of eminent domain was immaterial so far as respected the amount of the land, or the nature of the interest, taken.   In either event it was to acquire under the peculiar circumstances the same estate, namely, a fee in the whole land with its easements and appurtenances.   There seems to be no other reasonable construction of the statute.   The amending statute being St. 1871, c. 345, has no bearing to the contrary.

*Exceptions overruled.*