### THAYER v. CITY OF BOSTON et al.

(District Court, D. Massachusetts. July 19, 1913.)

No. 334.

EMINENT DOMAIN (§ 118*) — PUBLIC PARK — APPROPRIATION TO NEW USE — RIGHTS OF ADJOINING OWNERS.

Under the law of Massachusetts the mere acquisition by a city of land for a public park under authority of an act of the Legislature, and the levying and collection of assessments on adjoining property to pay for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the same, did not create any contract or property right appurtenant to the assessed land to have the land purchased maintained forever as a park, and the state may authorize its use for any other public, although inconsistent, purpose, without violation of the constitutional provision against impairment of contracts or deprival of property without due process of law.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 303; Dec. Dig. § 118.*]

In Equity. Suit by Alice R. Thayer against the City of Boston and others. On motion for preliminary injunction and hearing on the merits. Decree for defendants.

Matthews, Thompson & Spring and Hudson & Nichols, all of Boston, Mass., for complainant.

Joseph J. Corbett and George A. Flynn, both of Boston, Mass., for defendants.

DODGE, Circuit Judge. This bill was filed April 2, 1912, and a subpœna thereon issued, returnable May 6, 1912. A summons to show cause against the plaintiff's prayer for a preliminary injunction was also issued, returnable July 11, 1912. Affidavits in support of this prayer were filed by the plaintiff on June 27, 1912, for the defendants, against it, on July 5, 1912, and for the plaintiff, in reply, on July 8, 1912. On the latter date there was also filed a stipulation between the parties agreeing certain facts. On February 20, 1913, the bill was amended by consent, and on the same date the defendants filed their answer to it. Also on February 20, 1913, the parties agreed, by stipulation then filed, that the affidavits might be regarded as of the same force and effect as if filed for the purpose of a hearing on the merits, and that the facts agreed July 8, 1912, might be taken as true for the purposes of such a hearing. Such a hearing was had on March 12, 1913; the plaintiff first filing, by leave of court, a further amendment to its bill, the answer already filed applying to the bill as amended. The hearing is thus to be regarded as a hearing on pleadings and proofs.

The plaintiff owns and occupies a residence at 30 Fenway, in Boston. She bought the lot in 1895, and thereafter built a house upon it. The property abuts on and faces the Back Bay Fens, a public park, located, laid out, and established in Boston by the board of park commissioners of that city in 1879. The board was established by, and it acted under authority given it by, a state statute. St. Mass. 1875, c. 185.

The land included in this park was taken by the board and paid for by the city in accordance with provisions contained in the statute cited. Acting in accordance with other provisions, also contained in it, the board assessed about 70 per cent. of the money expended to acquire the land upon adjoining private estates adjudged to have been specially benefited by the "location or laying out" of the park. These assessments, having been held valid by the Massachusetts Supreme Court, were collected and paid, excepting such as were abated or assumed by the city. A parcel of land adjoining the park, between its Boylston street

and Westland avenue entrances, designated as lot 44 in the assessment proceedings, was one of the estates thus assessed. Its then owner paid the assessment. In it was included the lot now belonging to the plaintiff. In each of the successive subsequent conveyances, whereby this lot has come from the then owner of lot 44 to the plaintiff, all privileges and appurtenances belonging to the land transferred have been expressly conveyed.

A later Massachusetts statute (St. 1911, c. 540), enacted June 10, 1911, has authorized the board of park commissioners above mentioned to permit the erection of a building for the High School of Commerce, within the limits of the park established as above, upon the request of the Boston schoolhouse commissioners and with the approval of the Boston school committee. These bodies having duly requested and approved their proposed action, the park commissioners have voted to permit the erection of the building for the purpose stated in the act of 1911, within the limits of the park; certain dimensions of the intended building being specified in their vote.

The city of Boston and its three schoolhouse commissioners, by name, are made defendants in the plaintiff's bill. Before filing it, on December 12, 1911, she notified the mayor of the city that she objected to the erection of the building as proposed. In her bill she alleges that the building is to be "directly opposite" her property, that the erection and maintenance of such a building is a use of the land thereby occupied inconsistent with its use as a park, and a use which will inflict great, permanent, and irreparable damage upon her. Further alleging that no compensation has been awarded her, nor any method provided by statute for the determination or payment of such compensation, she avers that the act of 1911 impairs the obligation of a contract between the state and city and the owners of land assessed as above, including herself; also that said act, the above proceedings under it, and the construction of the building in pursuance thereof, will deprive her of her property without due process of law, and will also deny her the equal protection of the law.

The defendants deny that the erection and maintenance of the proposed building is a use of the land so occupied inconsistent with its use as a park. But in Higginson v. Treasurer, etc., 212 Mass. 583, 591, 99 N. E. 523, 42 L. R. A. (N. S.) 215, which was a taxpayers' suit to restrain the proposed erection, the highest court of the state has held that such a use of the land will be inconsistent with its use as a park, deciding also, however, that the state had the right, if it thought fit, to authorize such inconsistent use. The defendants' answer does not expressly deny that the proposed erection will inflict great, permanent, and irreparable damage to the plaintiff's property. In her affidavit she estimates the damage at more than $5,000. The present value of the property is admitted to be at least $45,000. Affidavits of three witnesses, variously qualified to give an opinion, filed on her behalf, are to the effect that such damage will be sustained, and that its amount will be at least $5,000. On the other hand, the defendants submit three affidavits, wherein the opinion is expressed that the plaintiff's property will not be damaged in value. It is agreed by the parties that the rear

of the building, if erected as proposed, will be 700 feet distant in an air line from the plaintiff's premises—1,200 and 1,600 feet distant, respectively, therefrom by the traveled ways; also that its site is shown on the plan marked Exhibit A, which may be referred to in connection herewith, and that its length will be 300 feet, its depth 150 feet, its greatest height 86 feet. A photograph from a perspective drawing is annexed to the defendant Logue's affidavit, and shows the intended front aspect of the building when completed. Exhibit A, however, shows that the rear view will be the one presented toward the plaintiff's property. My conclusion, from all that is found in the affidavits and agreed facts upon the question, and from the plans and photographs above mentioned, is that substantial damage to the market value of the plaintiff's property is to be apprehended; and I am not satisfied that the damage may not be at least the jurisdictional amount.

Assuming that the erection of the building as proposed will thus substantially impair the present market value of the plaintiff's property, will it involve an invasion of her rights under the Constitution of the United States? This question, as to the owners generally of assessed abutting or neighboring land, the court declined to consider in Higginson v. Treasurer, etc., above cited, because no such owner was a party to the case before it. The plaintiff says the question is one of first impression in this state. The plaintiff avers and the defendants deny that from the levying and collection of the assessments described there arose, by operation of law, an implied contract between the state and city, on the one hand, and the assessed owners, their heirs, executors, administrators, and assigns, on the other, that the land then taken for park purposes should be forever maintained as a park, and should never be devoted to any use inconsistent with that use. This is the contract, the obligation whereof she says the state and city are impairing by the enaction of the act of 1911 and the proceedings which have been taken under it. The plaintiff avers, and the defendants deny, that by the levying and collection of said assessments a property right appurtenant to the assessed land was created to have the land taken in those proceedings maintained forever as a park, instead of being devoted to any inconsistent use. This is the property right of which she says the state and city are to deprive her without due process of law, and in respect of which they are about to deny her the equal protection of the law.

That no compensation has been awarded the plaintiff in connection with the proposed erection, nor any proceedings had purporting to take any of her property, or any interest in the Fens belonging to her, is conceded. No method has been provided, or is suggested, whereby, if she has any right appurtenant to her land, such as she claims, she can get compensation for impairment of its value. Her right to the relief she asks depends on the question whether, as owner of her land, she has succeeded to any such right in contract as she claims, or to any appurtenant property right, such as she claims, to require perpetual maintenance of the park in its integrity.

Were the park land subject to any easement in favor of hers, created by grant, reservation, or express contract, it would be property belong-

ing to her, of which she could not be deprived for the public benefit without just compensation. Ladd v. Boston, 151 Mass. 585, 24 N. E. 858, 21 Am. St. Rep. 481. Property rights entitled to the same protection would belong to her, if, by any means, the park land had become subject to equitable restrictions in favor of hers, forbidding its use at any time for other than park purposes. Thus in Muhlker v. N. Y., etc., Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872 (1904), it was held that not even by permission or command of the state, and for a public purpose, could a city authorize an elevated railway to invade, without compensation, the right to light and air above the surface of a street belonging to an abutting owner whose predecessor in title had deeded the bed of the street to the city in trust, to be kept open forever for street purposes. In Wilson v. Mass. Institute, etc., 188 Mass. 565, 75 N. E. 128 (1905), it was held that the state, after having granted certain land to educational institutions, under provisions addressed to future purchasers of surrounding lots then belonging to it, the provisions being that the granted land should be reserved from sale forever, kept as an open space or for the use of the grantee institutions, and that they should not cover with their buildings more than one-third of the granted area, could not, as against the owners of surrounding lots meanwhile bought on the faith of such provisions, by a later act authorize one of the grantee institutions to build over more than one-third of the area.

In the present case there was no dedication of the park land, nor any acquisition of it by the city, upon a trust imposed by former owners. The plaintiff has, in the first place, to show that the assessments upon adjacent properties, including hers, were levied and paid upon terms or under circumstances which fairly gave those assessed owners who paid them, or subsequent purchasers, the right to understand that they were then being assessed and were paying for nothing less than the perpetual maintenance of an adjacent park, consisting of the land acquired by the city as stated.

Nowhere in the state statute of 1875, or in any of the proceedings under it to take this land, or assess betterments therefor and collect them, or in the decision sustaining those assessments (Foster v. Park Com'rs, 133 Mass. 321), can any more explicit definition be found of the use for which the land was being taken than that it was for the "location or laying out of a public park or parks." The plaintiff says that a public park is in its nature of permanent duration, and that devotion of the land to other uses destroys the entire consideration for the assessments.

But in Higginson v. Treasurer, etc., 212 Mass. 583, 99 N. E. 523, 42 L. R. A. (N. S.) 215, before cited, the Supreme Court of the state has held as to this land that, though taken by the city in fee, it had been taken by an agency of the state for a public use, and that the right remained in the state to change that public use when it saw fit, and devote the land, as it did, to another and an inconsistent use. This being the law of the state, I think all parties affected by the taking and assessments of 1879 must be presumed to have understood that the special benefits then paid for did not consist in having the land

taken maintained as a park forever, but only in having it established as a park and so maintained so long as the state should not see fit to substitute for that use a different public use. As is said in Nichols, Eminent Domain, § 141, with regard to the discontinuance of streets for the location whereof abuttors have been assessed:

"The possibility of discontinuance is considered in reckoning the amount of the assessment."

Such substitution by the state of a different public use would, of course, be a thing unlikely to happen soon after the establishment of a park, and in this case it has not happened for more than 30 years afterward. Upon such authorities as have been found, I am unable to hold that any right to assume that it would never happen accrued in favor of the assessed land. In Home, etc., v. Commonwealth, 202 Mass. 422, 429, 430, 89 N. E. 124, 127 (24 L. R. A. [N. S.] 79), the court said:

"After the erection of the South Terminal Station in Boston, there was special taxation upon real estate, covering a very large area, because of the increase of its value from the establishment of the station there. Sears v. Street Commissioners, 180 Mass. 274 [62 N. E. 397, 62 L. R. A. 144]. If for good reasons, in the public interest, the Legislature should provide for the removal of the station, it can hardly be contended that the diminution in value of property in the neighborhood would entitle the owners to compensation as for a taking of their property under the right of eminent domain."

If this view of the matter is the right one, it can make no difference that the plaintiff's land abuts directly on the park, and thus suffers a greater diminution in value by the erection of the proposed school building than does assessed land not abutting and more remote. It paid more for a greater benefit than did such land in 1879, but acquired by such payment no right of a different nature. The plaintiff's case is put by her bill wholly upon the rights, whether contract rights or property rights, which she claims to have accrued by virtue of the assessment proceedings had when the park was established. She neither alleges nor proves that anything is to be done unlawfully affecting the public rights of people generally, but which will also cause special and peculiar damage to her property.

The plaintiff fails for the above reasons to maintain her contention that to permit the erection of the proposed building within the Back Bay Fens will impair the obligation of any contract with her or her predecessors in title, and to show that its erection will invade any property right belonging to her.

Her bill is therefore to be dismissed, with costs.